IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20406
_____


HOUSTON CASUALTY COMPANY,

Plaintiff-Appellant-
Cross-Appellee,

versus

CERTAIN UNDERWRITERS AT
LLOYD'S, subscribing to
reinsurance policy no. 839/DA44790,
and COLIN BAKER

Defendants-Appellees-
Cross-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Texas
USDC No. H-97-CV-1381
_____

April 5, 2001

Before FARRIS[*], JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:[**]

    In this appeal we are presented with the question whether the

Underwriters may avoid the reinsurance policy because the Houston

Casualty Company, acting through Fenchurch Insurance Brokers,

misrepresented a material fact that induced the making of the

---

    [*]Circuit Judge of the Ninth Circuit, sitting by designation.

    [**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

policy.  The resolution of this issue depends largely upon whether Texas law or English law applies.  We have reviewed the district court's choice-of-law determination *de novo*, see <u>Arochem Corp. v. Wilomi, Inc.</u>, 962 F.2d 496, 498 (5th Cir. 1992), and agree fully with the district court's careful application of the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws.  We further agree that England has the more significant relationship to the transaction and the parties.

Applying English law, the district court held that the doctrine of *uberrimae fidei* allowed the Underwriters to avoid the policy because Fenchurch's unintentional misrepresentation (that the original insurance policy contained language similar to LSW 507) was material and induced the Underwriters to agree to the reinsurance policy.  The district court's conclusion was correct.  The Underwriters reasonably believed–based on Fenchurch's negligent misrepresentation embodied in Endorsement 3–that the LSW 507 language was already part of the original insurance policy and would thus "follow through" to the reinsurance policy.  Moreover, the evidence fails to show that any policy would have been issued without the misrepresentation embodied in Endorsement 3.

HCC argues, however, that even if *uberrimae fidei* applies to

this case,[1] the Underwriters are entitled to avoid liability based on only Endorsement 3 and not based on the entire contract. Specifically, HCC contends that Fenchurch's misrepresentation could not have induced the Underwriters to enter into this reinsurance contract because the misrepresentation occurred approximately one year after the slip was scratched. However, if the Underwriters were permitted to avoid only Endorsement 3, we would be left with a slip whose terms were so unclear with respect to the basis of loss that Fenchurch and the Lloyd's Policy Signing Office agreed that a policy could not be assembled. The Fenchurch employees who drafted and approved Endorsement 3 *on behalf of HCC* evidently understood the endorsement to do nothing more than clarify an ambiguous term already contained in the slip. Under these circumstances, it is, as a matter of contract construction, legally improper to treat the slip, the endorsement, and the final policy as discrete and severable agreements. The district court thus did not err in concluding that the Underwriters were entitled to avoid the reinsurance agreement in its entirety.

With respect to the contract reformation issue raised on cross-appeal, we must determine "only whether the court clearly erred in its finding as to whether there was clear and convincing

---

[1]Contrary to HCC's suggestion at oral argument, there is no indication that the English doctrine of *uberrimae fidei* (as opposed to the American version of this doctrine) has been limited to maritime contracts.

evidence of mutual mistake." <u>Enserch Corp. v. Shand Morahan & Co., Inc.</u>, 952 F.2d 1485, 1502 (5th Cir. 1992). We conclude that the district court did not err in refusing to reform the contract because the weight of the evidence supports the conclusion that the parties had not reached a definitive and explicit agreement as to the basis of loss.

A F F I R M E D .